IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John David Leatherwood a/k/a Nico Coty Toscani,<br><br>       Plaintiff,<br><br>-versus-<br><br>Director Jon Ozmint, SCDC; USC Dept. Of Neurosurgery, Dr. Raymond Sweet; SCDC Health Care Service, John Solomon, in his capacity,<br><br>       Defendants. | C. A. No. 2:10-0048-RBH-RSC<br><br>**REPORT AND RECOMMENDATION** |

This civil rights action under 42 U.S.C. § 1983[1] (West 1994 & Supp. 1998) brought by a prisoner proceeding pro se and in forma pauperis is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment. 28 U.S.C. § 636(b).

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

On January 8, 2010, the plaintiff, Nico Coty Toscani, also known as John David Leatherwood, sued "Director Jon Ozmint, SCDC; USC Dep't. of Neurosurgery, Dr. Raymond Sweet; SCDC Health Care Service, John Solomon, in his Capacity," complaining of deliberate indifference to his serious medical needs. On March 1, 2010, he amended his complaint to indicate that he was suing the defendants in both their individual and official capacities. On April 21, 2010, he amended his complaint to indicate he seeks a court order that SCDC provided him certain back surgery, pay all associated costs, place him in a pain management program with stronger medications, return of his heating pad, have his bladder control functions "looked at" if the surgery does not restore total control due to nerve damage. He also seeks "possible" damages up to 2 to 4 million dollars."

Defendant Sweet filed his motion for summary judgment on August 13, 2010, and Defendants Ozmint and Solomon filed their motion for summary judgment on August 19, 2010. On August 17, 2010, and August 23, 2010, the plaintiff was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). The plaintiff opposed the motion on September 14, 2010, and September 28, 2010. All parties have filed copies of the plaintiff's medical records, and their own

affidavits.[2] Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where a case is "decided on summary judgment, there have not yet been factual findings by a judge or jury, and [the appellant's] version of events ... differs substantially from [the appellee's,] ... courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the ... motion." <u>Scott v. Harris</u>, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007) (internal quotation marks and alterations omitted).

Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof.

---

[2] The plaintiff also filed numerous unverified exhibits such as copies of articles about care of back pain, but since these exhibits do not meet evidentiary standards, they cannot be considered in deciding this motion. Fed.R.Civ.P. 56(e)(1).

3

Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled

to judgment in his favor. Id., 477 U.S. at 252.

## **MEDICAL CARE**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one who has committed a crime. See U.S. Const. Amend. VIII. Accordingly, a prisoner makes out a claim under the Eighth Amendment if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339 (1998). These requirements go beyond even a showing of negligence, and requires Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." Id.

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to

5

attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities).

Likewise, constitutionally, the state is not required to furnish prisoners the best of care, only reasonable care. <u>Vinnedge v. Gibbs</u>, 550 F.2d 926 (4th Cir. 1977). The Constitution also does not guarantee a prisoner the treatment of his choice. <u>Jackson v. Fair</u>, 846 F.2d 811 (1st Cir. 1988). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under § 1983. <u>Sosabee v. Murphy</u>, 797 F.2d 179 (4th Cir. 1986). Even if plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants. Section 1983 does not provide for a remedy for violation of state law, but only for violations which rise to the level of unconstitutional deprivation. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, <u>supra</u>. Negligence simply is not actionable under 42 U.S.C. § 1983. <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).

In a § 1983 claim, whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry. First, the prisoner must show that he was deprived of an objectively serious human need. <u>Johnson v.</u>

Quinones, 145 F.3d 164 (4th Cir. 1998). Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Farmer v. Brennan, 511 U.S. 825 (1994) and cases interpreting Farmer, make clear that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific serious risk of harm confronting the inmate. See Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79 (stating that "the official must both be aware that a substantial risk of serious harm exists, and he must also draw the inference").

Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Prison official s must know of and disregard an objectively serious condition, medical need, or risk of harm. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to

a specific risk of harm).

## **RESPONDEAT SUPERIOR**

It is settled that the doctrines of vicarious liability and respondeat superior do not apply in § 1983 actions. <u>Vinnedge v. Gibbs</u>, 550 F.2d 926 (4th Cir. 1977). A defendant cannot be held liable for the acts of others without specific wrongdoing by that defendant. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978).

## **QUALIFIED IMMUNITY**

The doctrine of qualified immunity protects government officials who are carrying out discretionary functions from personal monetary liability in cases where their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). In <u>Cleavinger v. Saxner</u>, 474 U.S. 193 (1985), the United States Supreme Court upheld the extension of qualified immunity to prison officials. In discussing the issue of qualified immunity, the Court of Appeals for the Fourth Circuit stated that:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being

8

> challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 118 S.Ct. 89 (1995).

In addressing the defense of qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Lane, 526 U.S. 286, 290 (1999). If the court initially determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

## FACTS

The facts either undisputed or according to the plaintiff as the non-moving party and all reasonable inferences therefrom are as follow.

Defendant Dr. Raymond Sweet is a physician, Board Certified in Neurosurgery, employed by the University of South Carolina School of Medicine (USC) in its Department of Neurosurgery. USC has a contract with the South Carolina

9

Department of Corrections (SCDC) to provide medical services to its inmates.

On May 1, 2008, Dr. Sweet examined Plaintiff in his office in consultation from SCDC.[3] Dr. Sweet affied that Plaintiff presented with a complaint of low back pain that he had been having for a few years and some muscle spasm in the back secondary to a gunshot wound to his chest in September 2000. Plaintiff stated that he had occasional left leg pain that was sharp and constant, but he was not weak or numb. He voided slowly on and off. He was taking Inderal, Strattera for his ADD, and Motrin. Plaintiff gave a history of testicular surgery for a spermatocele.

Dr. Sweet's physical exam revealed that Plaintiff was in no acute distress, his vital signs were stable, and the review of systems was unremarkable. The neurological exam was within normal limits. Plaintiff had good strength in all four extremities and normal sensation bilaterally. His gait was slightly stiff. Dr. Sweet's review of Plaintiff's most recent back MRI dated April 22, 2008, showed Plaintiff with a slight disc bulge at L5-S1, right, and central bulging. Plaintiff did not have a ruptured disc, tumor or blood clot in the spine.

Dr. Sweet's impression was lumbar spondylosis, a

---

[3] Def. ex. B is a copy of Dr. Sweet's dictated office note, his handwritten consult note, the SCDC consultation request and a back MRI report dated April 22, 2008.

10

degenerative joint disease affecting the lumbar vertebrae that causes pain and stiffness, with no evidence of radiculopathy, that is, no evidence of compression of the nerve roots. The doctor determined that Plaintiff did not need surgery at that time and recommended chronic pain management.

During the office visit, Plaintiff did not complain of any acute or chronic urinary problems, and the SCDC consult did not mention a history of any urinary problems. Plaintiff's The MRI did not show any spinal abnormalities that can cause a neurogenic bladder or loss of bladder control. If Plaintiff had a neurological problem in the back, Dr. Sweet opined that it would be highly unusual for him to have only bladder problems without lower extremity weakness or reflex problems or loss of sensation, none of which he complained about to Dr. Sweet and none of which he found on physical exam. Further, Dr. Sweet opined that if Plaintiff has urinary problems, most likely it was not a neurosurgical/spinal problem and his failure to recommend and/or to perform back surgery most likely did not result in injury or damage to the Plaintiff.

Upon information and belief, Dr. Sweet affied that urologists are treating Plaintiff's urinary complaints; he is not aware of any urologists requesting a follow-up consultation with neurosurgery, and no one has asked him to re-evaluate Plaintiff. Therefore, based on the above, Dr. Sweet stated that he did not

11

act with deliberate indifference and did not violate any standards of medical practice in his care and treatment of Plaintiff that are a proximate cause of his injuries and damages.

Defendant Jon Ozmint "is the Director of the State of South Carolina Dept. of Corrections and Plaintiff believes that he "is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Ridgeland Correctional Institution." See Amended Complaint at paragraph 4. Similarly Defendant Dr. Solomon is "the Director for Health Care Services and he legally responsible for operation of all medical services in SCDC and those under him at each institution, also for Policy HS-18.15 Title: Levels of Care; Policy Statement and it's guidelines for care of inmates through medical services." See Amended Complaint at paragraph 5.

Plaintiff alleged that Ozmint and Solomon are liable to him because "they are the supervisors ...which is apparent due to the fact 9 months have passed and defendants have not tried to remedy a serious medical need to one they have incarcerated. They have wasted money on a lawyer to fight an inmate (pro se) to keep from doing surgery in which they will have to do anyway and to give proper medical care to an inmate to correct a deviation from standard of care by one defendant contracted out to care for its inmates." Pl. Opp. to Ozmint's and Solomon's motion, pg. 2).

**DISCUSSION**

A review of the record and relevant case law reveals that the defendants' motions for summary judgment should be granted and this matter ended.

Plaintiff has alleged that Defendants Ozmint and Solomon have been deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. In order to state a claim for deliberate indifference, "[a] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Plaintiff has not forecast evidence to carry his very high burden of proof as to Defendant Ozmint or Defendant Solomon. Plaintiff has presented no evidence that either Defendant Ozmint or Defendant Solomon were involved in the direct provision of health care services to Plaintiff or actually knew of and disregarded a substantial risk of serious injury to Plaintiff. Furthermore, Plaintiff has presented no evidence that either Defendant Ozmint or Defendant Solomon actually knew of and ignored Plaintiff's alleged serious need for medical care.

A plaintiff must affirmatively show that a defendant acted personally in the deprivation of his constitutional rights.

13

Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). When there are no personal allegations against a defendant, that defendant is properly dismissed. See, Karafiat v. O'Mally, 2002 WL 31845135 (6th Cir. 2002)(unpublished); Whaley v. Hatcher, 2008 WL 1806124, at note 1 (W.D.N.C. 2008).

Finally, it must be noted that the Fourth Circuit has held that corrections administrators, such as Defendant Ozmint and Defendant Solomon, should be entitled to rely on their health care providers' expertise. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In Miltier, the Fourth Circuit held that there was no evidence to support a finding that corrections officials tacitly authorized their subordinate medical personnel to provide inadequate medical care. Id. As in Miltier, there is no evidence here to show that Defendant Ozmint or Defendant Solomon authorized any subordinates to provide constitutionally inadequate medical care or to delay providing any specific medical treatment to Plaintiff. Indeed, the record of Plaintiff's medical treatment clearly reflects that he was referred out of SCDC to the MUSC Department of Neurology for a surgical consultation with Dr. Raymond Sweet, and otherwise provided a plethora of medical treatment to him. In sum, Plaintiff has failed to demonstrate, that either Defendant Ozmint or Defendant Solomon were in any respect deliberately indifferent to a serious medical need of Plaintiff in violation of the Eight

Amendment. On the record before the court, Defendant Ozmint and Defendant Solomon are both entitled to summary judgment.

Judgment as a matter of law should also be granted to Dr. Sweet. As reviewed previously, Defendant's affidavit sets forth in detail the medical care he provided to Plaintiff on May 1, 2008, based upon his dictated office note, handwritten consult note, SCDC consultation request, and Plaintiff's most recent MRI report dated April 22, 2008. Based upon his medical expertise, Dr. Sweet determined that Plaintiff did not need back surgery and recommended chronic pain management. Plaintiff simply has no evidence to create any genuine material fact questions which must await determination by a fact finder. Plaintiff's medical opinions regarding his treatment amount to conjecture and are insufficient as a matter of law. See, e.g., Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188-89 (11th Cir. 1994); Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

At the most, Plaintiff's complaints about his back and urinary problems involve a disagreement about his diagnosis and the type of medical treatment he should have. As reviewed above, a §1983 claim is not stated by disagreements between an inmate and a physician as to treatment or as to a diagnosis. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Webster v. Jones, 554 F.2d 1285 (4th

Cir. 1977).

In short, based on the above, Plaintiff failed to demonstrate that Dr. Sweet was deliberately indifferent to his health or safety, and therefore, Dr. Sweet's motion should be granted.

As an additional and alternate ground to grant Defendants' motions it appears that they are entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982), and its progeny.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motions for summary judgment be granted, that any other outstanding motions be denied a moot, and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
October 7, 2010

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985).